## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| Constance Salters, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 6:19-0721-RMG |
| vs. | ) | |
| | ) | |
| Andrew M. Saul, | ) | |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain relief from the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pretrial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on March 10, 2020, recommending that the Commissioner's decision be affirmed. (Dkt. No. 15). Plaintiff filed objections to the R & R, and the Commissioner filed a reply. (Dkt. Nos. 17, 18).

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection has been made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

-1-

The role of the federal judiciary in the administrative scheme of the Social Security Act is a limited one.  Section 405(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance."  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes *de novo* review of factual circumstances that substitutes the Court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is limited, "it does not follow, however, that the findings of the administrative agency are mechanically accepted.  The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action."  *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings."  *Vitek*, 438 F.2d at 1157-58.

A Social Security Act claimant need not demonstrate a period of disability that covers the entire time between the alleged onset date and the administrative hearing date.   Instead, a claimant is entitled to benefits if he or she is able to show disability for any 12 consecutive months between the onset date and the date of the administrative hearing. 42 U.S.C. § 1382c(a)(3)(A); *Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075 (N.D. Ill. 2013).  Thus, where a claimant may have experienced a period of disability of 12 consecutive months at any time during the relevant time period of the application, the Administrative Law Judge ("ALJ") is obligated to evaluate that specific time period to determine if the claimant may be eligible for a closed period of disability benefits.  *Shiplett v. Colvin*, No. 5:15-cv-00055, 2016 WL 6783270, at

*13 (W.D. Va. 2014).

## Background

Plaintiff was thirty one years of age at the time her alleged onset date of disability of June 1, 2015.  At that time, she was experiencing significant spinal abnormalities arising from a herniated disc and underwent a lumbar discectomy on June 3, 2015.  Tr. 388.  Following her surgery, she continued to complain of significant back and radicular symptoms and a MRI of June 24, 2015 demonstrated likely nerve root inflamation near the surgical area of L5-S1. Tr. 410-11. Plaintiff was initially treated conservatively without relief and was then referred to Dr. Chi Lim, an orthopaedic spine specialist.  Dr. Lim documented Plaintiff's radiating pain, worse with movement, and diagnosed her with lumbosacral radiculopathy on November 23, 2015. Tr. 721-29. A MRI of December 4, 2015 again documented the presence of abnormalities around the S1 nerve root. Tr. 719-20.  Plaintiff continued to be followed by Dr. Lim, and he noted that her daily activities were being limited by severe radicular pain.  He recommended that Plaintiff undergo a second back surgery, a lumbar fusion, and this was performed on March 1, 2016.  Tr. 693-94.

Plaintiff reported that her right leg had less pain following the second surgery but she continued to experience left leg and back pain. Tr. 688.  A MRI of March 22, 2016 documented continued abnormalities in the L5-S1 nerve root.  Tr. 686-87.  Plaintiff experienced some brief reduction in pain symptoms in early April 2016, but Plaintiff's persistent symptoms caused Dr. Lim to suspect that the cage from the fusion surgery might be impacting the nerve root.  Tr. 676, 678.  Dr. Lim ordered two epidural injections for pain, and, when they did not produce significant improvement, referred Plaintiff on August 4, 2016 to a pain management specialist,

Dr. Paul DiNicola. Tr. 671, 809-11.

Dr. DiNicola conducted a detailed diagnostic workup on September 14, 2016 and documented Plaintiff's persistent leg and back pain and positive straight leg raises. He also suspected complications from the S1 nerve root, which was confirmed by another MRI of September 23, 2016. Tr. 804, 805, 807. Dr. DiNicola raised with Plaintiff the possibility of the surgical implantation of a spinal cord stimulator to address her severe nerve root pain, and she indicated she was receptive to the treatment. Dr. DiNicola then referred Plaintiff back to Dr. Lim for a surgical evaluation of this possible procedure. Dr. Lim evaluated Plaintiff on November 7, 2016 and confirmed Dr. DiNicola's findings of radiating lumbar pain that appeared to be getting worse since the second surgery. Tr. 797. Dr. Lim endorsed the proposed spinal cord stimulator for Plaintiff.

Over the course of his treatment of Plaintiff, Dr. DiNicola experimented with various pain medications and found that Percocet provided the best relief with the fewest side effects. Plaintiff's left lower extremity symptoms nonetheless persisted, and she continued to have documented positive straight leg raises. On February 27, 2017, Dr. DiNicola attached to Plaintiff a temporary spinal cord stimulator and obtained excellent results. With this success with a temporary stimulator, Dr. Lim took Plaintiff back to surgery a third time on April 20, 2017 and implanted the spinal cord stimulator. Tr.750-52. Plaintiff received some benefit from the permanent stimulator, but the effectiveness of the device was greatly improved when Dr. Lim made some adjustments on June 16, 2017, obtaining much broader coverage. Tr. 735. When Plaintiff next visited with Dr. DiNicola on August 2, 2017, his record documented that Plaintiff was experiencing good pain relief from the combination of the pain medicine and spinal cord

-4-

stimulator.  Tr. 865-68.

Plaintiff complained of new pain near the spinal cord stimulator battery pack in an office visit with Dr. Lim on August 14, 2017.  After these complaints persisted, Dr. Lim conducted another surgical procedure correcting the battery placement issue on September 12, 2017.  Tr. 858. Thereafter, Plaintiff's spinal cord stimulator appeared to work without complications and the combination of the stimulator and pain medicine provided her good functional improvement. Tr. 847, 854.

The ALJ conducted an administrative hearing on November 2, 2017 and issued a decision on February 8, 2018, finding that Plaintiff maintained the residual functional capacity to perform light work during the entire period from the onset date of June 1, 2015 until the hearing date.  The ALJ recognized Plaintiff's significant limitations from the onset date until her second major back surgery on March 1, 2016, but observed that this period was less than 12 consecutive months.  The ALJ found that Plaintif "has done well since her second back surgery," and her problems became a "bit worse" thereafter, requiring two epidural injections.  The ALJ focused primarily on Plaintiff's positive response to the spinal cord stimulator and pain medicine, concluding she was not disabled for 12 consecutive months from the onset date until the hearing date.  Tr. 19-20.

**Discussion**

A.    There is not substantial evidence to support the ALJ's finding that Plaintiff "did well" following her second surgery until the time of the implantation and adjustments to the spinal cord stimulator.

There is significant record evidence that once Plaintiff had the spinal stimulator installed surgically and proper adjustments were made, that her severe nerve root pain substantially

decreased. The administrative record establishes plainly, however, that following Plaintiff's second surgery on March 1, 2016, she continued to experience severe nerve root pain, and her treating doctors diligently explored alternative treatments to provide her relief. These treatments included epidural injections, physical therapy, pain medications and, finally, a surgically implanted spinal cord stimulator.

During the period from Plaintiff's second surgery on March 1, 2016 until the adjustments were finally made to her spinal cord stimulator on June 16, 2017, there is no reasonable basis in this record to conclude that Plaintiff was doing "well" or was only briefly "a bit worse." Tr. 20. To the contrary, over 22 office visits with specialist treating physicians, Plaintiff battled severe nerve root pain that was documented on multiple MRI's, positive straight leg raises, and patient histories.

From the period of the onset date of June 1, 2015 until the completion of the adjustments to the spinal cord stimulator on June 16, 2017, the administrative record establishes without question that Plaintiff could not sustain competitive work 8 hours per day, 5 days per week. The finding of the ALJ that Plaintiff did "well" following her second surgery is not supported by substantial evidence in the record, and the Court finds there is not substantial evidence to support a finding that she retained a residual functional capacity for any level of non-disabled work from the onset date until June 16, 2017.[1]

---

[1] The ALJ relied on the opinions of two non-examining and non-treating physicians to support his decision that Plaintiff was able to perform light work during the period from her second surgery on March 1, 2016 until the implantation and adjustment of the spinal cord stimulator on June 16, 2017. Tr. 20-21. However, these chart-reviewing physicians prepared their reports on June 29, 2015 and December 4, 2015, before Plaintiff's second spine surgery and the many months of complicated treatment by Dr. Lim and Dr. DiNicola that followed. Tr. 76-78, 92-95. It is difficult to understand how such opinions could be given any weight by the ALJ

The Court's general practice is to remand decisions to the Commissioner for further administrative action, but it is well-settled that the District Court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by the District Court is appropriate where the record is fully developed and the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart,* , 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Williams v. Commissioner of Soc. Sec.,* 104 F. Supp. 2d 719, 721 (E.D. Mich. 2000). This is certainly the case here. With this record, an award of benefits during the closed period of June 1, 2015 until June 16, 2017 is mandated.

      B.     <u>There is substantial evidence to support the Commissioner's findings that Plaintiff retained the residual functional capacity for light work for the period June 17, 2017 until the administrative hearing on November 2, 2017.</u>

As this Court has described above, Plaintiff's treating physicians fashioned a treatment plan that provided Plaintiff relief from the most severe aspects of her nerve root pain, with a combination of a spinal cord stimulator and pain medications. The record demonstrates that once adjustments were made in the coverage of the spinal cord stimulator by Dr. Lim on June 16, 2017, Plaintiff experienced significant improvement. The Court has carefully reviewed the medical record and the testimony of Plaintiff regarding her symptoms following the successful placement of the spinal cord stimulator and appreciates that the Plaintiff and the ALJ view that conflicting evidence differently. Unlike the medical evidence prior to the placement of the spinal cord stimulator, this record is conflicted, and there is substantial evidence to support the findings of no disability from June 17, 2017 until the hearing date of November 2, 2017. Under

---

when these chart reviewers did not have access to and did not review the critical medical records on and after March 1, 2016.

the substantial evidence rule, the Court is mandated to defer to the agency decision where there is substantial evidence to support the decision of the Commissioner.  Consequently, the Court affirms the decision of the Commissioner for the period June 17, 2017 until November 2, 2017.

### Conclusion

Based on the foregoing, the Court, pursuant to Sentence Four of 42 U.S.C. § 405(g), reverses the decision of the Commissioner regarding the denial of benefits to Plaintiff for the period from June 1, 2015 until June 16, 2017, and remands this matter to the agency with instructions to award benefits during this time period.  Further, the Court affirms the decision of the Commissioner for the time period from June 17, 2017 until November 2, 2017.

**AND IT IS SO ORDERED.**


 s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge


April 22, 2020
Charleston, South Carolina

-8-